DISTRICT OF OREGON
**FILED**
February 11, 2025
Clerk, U.S. Bankruptcy Court

Below is an order of the court.

Teresa H. Pearson
TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br>Keith Y. Boyd,<br>Debtor. | Case No. 23-60899-thp7 |
| Steve Marasciullo and Stephanie Marasciullo, co-trustees of the David W. Doner, Jr., Separate Property Trust,<br>Plaintiffs,<br>v.<br>Keith Y. Boyd; Donald E. Grove, individually and as trustee of the Donald E. Grove II Irrevocable Trust; and Candace Amborn, Trustee,<br>Defendants.<br>and<br>Candace Amborn, Trustee,<br>Counter-Claimant,<br>v.<br>Steve Marasciullo and Stephanie Marasciullo, co-trustees of the David W. Doner, Jr., Separate Property Trust,<br>Counterclaim-Defendants. | Adv. Proc. No. 24-06054-thp<br><br>MEMORANDUM DECISION[1] |

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

This matter came before the court on (a) plaintiffs' motion for summary judgment,[2] (b) defendant Candace Amborn's cross-motion for summary judgment,[3] filed in her capacity as the chapter 7 bankruptcy trustee for the bankruptcy estate of Keith Y. Boyd, (c) defendant Donald E. Grove's cross-motion for summary judgment,[4] filed individually and in his capacity as trustee of the Donald E. Grove II Irrevocable Trust (the "Grove Trust"), and (d) defendant Keith Y. Boyd's cross-motion for summary judgment.[5] The court has reviewed the declarations of Melisa A. Button,[6] Loren S. Scott,[7] and Keith Y. Boyd.[8] The court held oral argument on the motion and cross-motions on January 15, 2025. The court has reviewed and considered all the briefing and arguments of counsel, and the records and files of this case.

For the reasons set forth below, this court will deny plaintiffs' motion for summary judgment and grant defendants' cross-motions for summary judgment.

**Standard for Summary Judgment**

The court shall grant summary judgment if the moving party shows that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.[9] All facts and inferences must be viewed in the light most favorable to the nonmoving party.[10]

In this case, the material facts are undisputed. The parties differ regarding what legal conclusions should be drawn from those facts. Accordingly, this case is well suited for disposition on summary judgment.

The court will set forth the material facts and procedural history chronologically, as that is useful to determining the rights of the parties at various specific points in time.

---

[2] ECF No. 21, filed Oct. 21, 2024.
[3] ECF No. 25, filed Nov. 15, 2024.
[4] ECF No. 26, filed Nov. 15, 2024.
[5] ECF No. 27, filed Nov. 15, 2024.
[6] ECF No. 22, filed Oct. 21, 2024.
[7] Included as part of ECF No. 26, filed Nov. 15, 2024.
[8] ECF No. 28, filed Nov. 15, 2024.
[9] Fed. R. Civ. P. 56(a), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).
[10] *Caneva v. Sun Cmtys. Operating L.P. (In re Caneva)*, 550 F.3d 755, 760 (9th Cir. 2008).

**Material Facts**

On October 16, 2012, a Statutory Warranty Deed was recorded in the real property records of Jackson County, Oregon, conveying certain real property (the "Tamarack Property") from grantors Jerry E. Watkins and Marilyn K. Watkins to grantee Mr. Boyd.[11] At all relevant times since then, Mr. Boyd and Mr. Grove have resided at the Tamarack Property.[12]

On February 14, 2022, Allen Thomashefsky, as trustee of the David W. Doner, Jr. Separate Property Trust (the "Doner Trust"),[13] filed a complaint to collect a debt against Mr. Boyd and B&G Property Investments, LLC, in the Circuit Court for the State of Oregon in Jackson County.[14] After service, Mr. Thomashefsky, as trustee of the Doner Trust, promptly filed a motion for summary judgment, which was set for hearing on April 25, 2022.[15]

On April 11, 2022, a Bargain and Sale Deed was recorded in the real property records of Jackson County, Oregon, conveying the Tamarack Property from Mr. Boyd to "Donald E. Grove, Trustee, The Donald E. Grove II, Irrevocable Living Trust."[16]

Mr. Thomashefsky, as trustee of the Doner Trust, prevailed on his summary judgment motion. On April 29, 2022, the Jackson County Circuit Court entered a judgment in the amount of $320,522, plus interests, costs, and attorney fees, in favor of the Doner Trust and against Keith Y. Boyd and B&G Property Investments, LLC.[17]

---

[11] ECF No. 22, Exh. 1.

[12] Amended Complaint, ECF No. 15, ¶ 18, filed Sept. 7, 2024; Defendant Boyd's Answer and Affirmative Defenses to First Amended Complaint, ECF No. 19, ¶ 12, filed Sept. 20, 2024; Defendant Grove's Answer and Affirmative Defenses to First Amended Complaint, ECF No. 20, ¶ 13, filed Sept. 23, 2024.

[13] At various times in this case, different people have been trustees of the Doner Trust. For purposes of accurately stating the facts, the court will identify the specific trustees involved throughout the Material Facts and the Procedural History sections of this memorandum decision. However, because the identity of the trustees has no effect on the merits of the legal issues, the court will simply refer to the Doner Trust throughout the Analysis section of this memorandum decision.

[14] ECF No. 22, Exh. 10.

[15] *Id.*

[16] ECF No. 22, Exh. 4.

[17] ECF No. 22, Exh. 5.

On August 22, 2022, Mr. Thomashefsky, as trustee of the Doner Trust, and another entity, the Forge Trust, filed a complaint for fraudulent conveyance against Mr. Boyd, and Mr. Grove, individually and as trustee of the Grove Trust, in the Jackson County Circuit Court.[18] In the complaint, plaintiffs sought (a) a declaration that the conveyance of the Tamarack Property by Mr. Boyd was a fraudulent transfer, (b) an injunction against any transfer of the Tamarack property during the pendency of the action, (c) an attachment lien on the Tamarack Property, (d) a judgment against Grove for the amount due under plaintiffs' judgments against Mr. Boyd or in the value of the Tamarack Property, whichever was less, (e) an order directing the sale of the Tamarack Property and application of the proceeds to plaintiffs' judgment, (f) costs, disbursements, and attorney fees, and (g) other just and equitable relief.[19]

On August 23, 2022, Mr. Thomashefsky, as trustee of the Doner Trust, and the Forge Trust recorded a Notice of Pendency of an Action (Lis Pendens) in the real property records of Jackson County, Oregon, identifying the Tamarack Property as the property affected.[20]

On September 9, 2022, a Correction Deed was recorded in the real property records of Jackson County, Oregon, conveying the Tamarack Property from Mr. Boyd to "Keith Y. Boyd, Trustee, The Keith Y. Boyd Living Trust dated December 18, 2012 and Donald E. Grove, Trustee, The Donald E. Grove II Irrevocable Living Trust."[21]

The Jackson County Circuit Court scheduled a hearing on a motion for summary judgment in the fraudulent conveyance action for May 30, 2023.[22]

On May 26, 2023, Mr. Boyd filed his voluntary chapter 7 bankruptcy case.[23] At that time, the fraudulent conveyance action in the Jackson County Circuit Court was unresolved and became subject to the automatic stay of 11 U.S.C. § 362(a).

---

[18] ECF No. 22, Exh. 6.
[19] *Id.*, pp. 4-5.
[20] ECF No. 22, Exh. 7.
[21] ECF No. 22, Exh. 8.
[22] ECF No. 22, Exh. 9.
[23] ECF No. 1, filed in case number 23-60899 on May 26, 2023.

**Procedural History**

On May 31, 2023, Mr. Thomashefsky, as trustee of the Doner Trust, and the Forge Trust filed a motion for relief from the automatic stay in Mr. Boyd's bankruptcy case.[24] In their motion, they sought relief from stay to continue to pursue the fraudulent transfer claim in Jackson County Circuit Court.[25] Ms. Amborn, as bankruptcy trustee, opposed that motion.[26]

On June 27, 2023, this court denied the motion for relief from stay at the hearing, and the ruling was memorialized in a minute order.[27] In the record of proceeding and minute order, this court summarized the proceeding and this court's ruling as follows:

> Counsel for creditor and trustee argued their respective positions on whether relief from stay should be granted. The fraudulent conveyance claims involve an alleged transfer by the debtor of the debtor's interest in property while creditor litigation was pending. The court found persuasive the rule discussed in *World Fuel Servs., Inc. v. Martin*, No. 3:16-CV-02303-MO, 2018 WL 847243 (D. Or. Feb. 13, 2018), *rev'd and remanded*, 770 F. App'x 359 (9th Cir. 2019), that in bankruptcy, where both a creditor and the trustee have fraudulent conveyance claims relating to property transferred by the debtor, the trustee has the exclusive right to pursue the action and the creditor may not. Although *World Fuel* was reversed and remanded, the reversal was based on facts not present in this record (specifically, that the property was transferred by a third party and not the debtor) and the general rule applies here (where debtor himself allegedly transferred the property).[28]

This order was not appealed.[29]

On November 6, 2023, Mr. Boyd and Mr. Grove, as trustee of the Grove Trust, filed an adversary proceeding complaint against Ms. Amborn, as bankruptcy trustee, seeking declaratory relief regarding the ownership of the Tamarack Property.[30] On December 6, 2023, Ms. Amborn, as bankruptcy trustee, filed an answer and counterclaims, asserting fraudulent transfer claims

---

[24] ECF No. 26, Exh. A.
[25] *Id.*, p. 9.
[26] ECF No. 26, Exh. B.
[27] ECF No. 26, Exh. C.
[28] *Id.*
[29] See Docket, *In re Keith Y. Boyd*, case no. 23-60899.
[30] ECF No. 26, Exh. D.

against Mr. Boyd and the Grove Trust and also seeking declaratory relief regarding the estate's interest in the Tamarack Property.[31]

On July 29, 2024, Steve Marasciullo and Stephanie Marasciullo, as co-trustees of the Doner Trust, filed this adversary proceeding against Mr. Boyd, Mr. Grove, individually and as trustee of the Grove Trust, and Ms. Amborn, as bankruptcy trustee, asserting claims for fraudulent conveyance against Mr. Boyd and Mr. Grove, individually and as trustee of the Grove Trust, and for declaratory judgment against all defendants.[32] The complaint was later amended.[33]

On August 29, 2024, Ms. Amborn, as bankruptcy trustee, filed an answer and counterclaims for declaratory judgment and attorney fees and costs in this adversary proceeding.[34] On September 19, 2024, Steve Marasciullo and Stephanie Marasciullo, as co-trustees of the Doner Trust, answered the counterclaims.[35]

On September 20, 2024, Mr. Boyd filed his answer and affirmative defenses to the first amended complaint in this adversary proceeding.[36] A few days later, on September 23, 2024, Mr. Grove, individually and as trustee of the Grove Trust, filed his answer and affirmative defenses to the first amended complaint in this adversary proceeding.[37]

On November 7, 2024, Ms. Amborn, as bankruptcy trustee, filed a motion in Mr. Boyd's bankruptcy case to approve a settlement of all claims between the bankruptcy estate, on one hand, and Mr. Boyd and Mr. Grove, individually and as trustee of the Grove Trust, on the other hand.[38] That proposed settlement included a negotiated resolution of the bankruptcy estate's fraudulent transfer claims against Mr. Boyd and Mr. Grove, individually and as trustee of the

---

[31] ECF No. 26, Exh. E.
[32] ECF No. 1, filed Jul. 29, 2024.
[33] ECF No. 15, filed Sep. 7, 2024.
[34] ECF No. 8, filed Aug. 29, 2024. Although the answer and counterclaims were filed to the original complaint, by agreement of the parties, it was deemed to apply to the amended complaint. See ECF No. 17, filed Sep. 12, 2024.
[35] ECF No. 18, filed Sept. 19, 2024.
[36] ECF No. 19, filed Sept. 20, 2024.
[37] ECF No. 20, filed Sept. 23, 2024.
[38] ECF No. 26, Exh. F.

Grove Trust.[39] Mr. and Ms. Marasciullo, as co-trustees of the Doner Trust, timely objected to the motion to approve the settlement due to concerns about how that settlement would impact this adversary proceeding.[40] The court set over the hearing on the motion to approve the settlement to be heard at the same time as the motion and cross-motions for summary judgment in this adversary proceeding.[41]

## Analysis

### I. The Doner Trust Cannot Pursue Fraudulent Transfer Claims Against Mr. Boyd, Mr. Grove, and the Grove Trust.

The Doner Trust provides evidence and asks this court to determine in this proceeding that Mr. Boyd's transfer of the Tamarack Property to the Grove Trust was a fraudulent transfer. This court declines to do so. For the reasons set forth in this court's June 27, 2023, order denying relief from stay, the Doner Trust no longer has the right to pursue these fraudulent transfer claims after Mr. Boyd filed bankruptcy. The order denying relief from stay was a final appealable order.[42] The Doner Trust did not appeal that order. That holding is now law of the case.[43] The Doner Trust cannot pursue the fraudulent transfer claims.

The Doner Trust argues that the court's decision on the motion for relief from stay is not preclusive because relief from stay proceedings are summary proceedings with limited effect that do not determine the merits of a creditor's underlying claim.[44] However, to the extent the authorities the Doner Trust relies upon address the effect of a decision made in a ruling on relief from stay (and not all of them do), they discussed issue preclusion, not the law of the case doctrine. And, while a relief from stay proceeding may be limited, it is not meaningless.

---

[39] *Id.*
[40] ECF No. 153, filed in case number 23-60899 on Nov. 13, 2024.
[41] ECF No. 156, filed in case number 23-60899 on Dec. 4, 2024.
[42] *Nat'l Env't Waste Corp. v. City of Riverside (In re Nat'l Env't Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997).
[43] *Gonzalez v. Arizona*, 677 F.3d 383, 389, n.4 (9th Cir. 2012). After the court entered its order on the motion for relief from stay, the trustee has pursued and negotiated a settlement of the fraudulent transfer claims.
[44] ECF No. 21, Supporting Brief, p. 27; ECF No. 33, filed Dec. 13, 2024, p.4.

Determination of whether a creditor has a colorable claim is appropriate in the context of a relief from stay motion.[45] This court held that, as a matter of law, once a bankruptcy case is filed the trustee is the only party that has the right to pursue fraudulent transfer claims. This holding was necessary to determine whether the Doner Trust had a colorable claim. It is appropriate to treat that holding as law of the case.

Even if the court were to reconsider the question of whether the Doner Trust could pursue its fraudulent transfer claim, this court would still apply the rule discussed in *World Fuel Servs., Inc. v. Martin*.[46] *World Fuel* held that in bankruptcy, where both a creditor and the trustee have fraudulent transfer claims relating to property transferred by the debtor, the trustee has the exclusive right to pursue the fraudulent transfer claims and the creditor may not.[47] This rule makes sense. Bankruptcy is a collective proceeding where the bankruptcy trustee has fiduciary duties to all creditors.[48] Where multiple creditors may have fraudulent transfer claims, the trustee ought to be able to assert those claims on behalf of all creditors. This avoids duplicative litigation and races among creditors to the courthouse. Allowing the trustee to pursue fraudulent transfers results in each creditor receiving its pro rata share of any recovery, which is an equitable result consistent with the Bankruptcy Code.

The Doner Trust attempts to distinguish *World Fuel* on the basis that *World Fuel* addressed the fraudulent transfer claims of unsecured creditors and the Doner Trust is a secured creditor. The Doner Trust previously asserted in its motion for relief from stay that the Doner Trust was a secured creditor.[49] The court was aware of that assertion when it ruled on the motion

---

[45] *First Fed. Bank of Cal. v. Robbins (In re Robbins)*, 310 B.R. 626, 631 (9th Cir. BAP 2004).
[46] *World Fuel Servs., Inc. v. Martin*, No. 3:16-CV-02303-MO, 2018 WL 847243 (D. Or. Feb. 13, 2018), *rev'd and remanded*, 770 F. App'x 359 (9th Cir. 2019).
[47] *Id.*, at *4. Although the Ninth Circuit Court of Appeals reversed and remanded on appeal, it did not hold the rule was incorrect—only that there was a disputed issue of fact regarding whether the debtor had an interest in the property transferred, and therefore summary judgment was not appropriate. 770 F. App'x at 359-60.
[48] *See Cochise College Park, Inc. v. Perry (In re Cochise Colle Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir. 1983) (Bankruptcy Act case, superseded by statute on other grounds).
[49] ECF No. 26, Exh. A.

for relief from stay and still applied the *World Fuel* rule. But even if the Doner Trust could raise that argument now, the argument lacks merit because the Doner Trust is not a secured creditor for the reasons set forth in Section II below.

The Doner Trust also asserts that it should be able to pursue its fraudulent transfer claims, because it believes there are some claims under state law the Doner Trust can pursue that the bankruptcy trustee cannot. This is incorrect. Using the strong-arm powers, the bankruptcy trustee can pursue any avoidance action that is avoidable by a creditor under state or other applicable non-bankruptcy law.[50] The bankruptcy trustee specifically can step into the shoes of the Donor Trust and avoid any claim the Doner Trust could avoid.[51] The bankruptcy trustee has, in fact, brought fraudulent conveyance claims against Mr. Boyd and the Grove Trust as part of her counterclaims in adversary proceeding case no. 23-6049.

## II. The Doner Trust Does Not Have a Lien or Property Interest in the Tamarack Property.

At all relevant times before April 11, 2022, title to the Tamarack Property was in Mr. Boyd's name. The Doner Trust did not have any property interest in the Tamarack Property. There is no evidence in the record that the Doner Trust held a trust deed, mortgage, or contract right giving it any interest in the Tamarack Property. The Doner Trust's claim against Mr. Boyd was a simple action for the collection of a debt, unrelated to the Tamarack Property.

On April 11, 2022, Mr. Boyd conveyed the Tamarack Property to the Grove Trust. Upon transfer, Mr. Boyd no longer held any legal interest in the Tamarack Property. Although Mr. Boyd's conveyance of the Tamarack Property may have been a *voidable* transaction, it was not a *void* transaction. Prior to 1986, Oregon adopted the Uniform Fraudulent Conveyance Act ("UFCA").[52] The UFCA expressly provided that "[e]very conveyance or assignment in writing

[50] 11 U.S.C. § 544. The statute of limitations has not yet expired on these claims. 11 U.S.C. § 544(A)(1).

[51] 11 U.S.C. § 544(b)(1) (the exception for charitable contributions does not apply here). For the reasons set forth in Section II, the Doner Trust is not a secured creditor.

[52] ORS 95.010 – ORS 95.100, *repealed by* Or. Laws 1985 c. 664.

or otherwise of any estate or interest in lands . . . made with the intent to hinder, delay or defraud creditors . . . as against the person so hindered, delayed or defrauded is void."[53] Effective January 1, 1986, Oregon repealed the UFCA and adopted the Uniform Fraudulent Transfer Act ("UFTA"), which remained effective through December 23, 2023.[54] The UFTA was effective when Mr. Boyd transferred the Tamarack Property. Under the UFTA, as adopted in Oregon, fraudulent transfers were no longer void, they were voidable. ORS 95.260 provided that a creditor could obtain avoidance of a fraudulent transfer as one of several remedies available to a creditor injured by a fraudulent transfer, subject to certain defenses transferees could raise.[55] When the Oregon Legislature repealed language specifically saying that a fraudulent transfer "is void"[56] and replaced it with language saying that the creditor "may obtain (a) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" subject to defenses of transferees, [57] it changed the treatment of fraudulent transfers from void to voidable.

When the Doner Trust obtained its judgment against Mr. Boyd and B&G Property Investments, LLC, on April 29, 2022, that judgment became a lien on all real property that Mr. Boyd owned in Jackson County on that date, and acquired in Jackson County thereafter.[58] However, on the date the judgment in favor of the Doner Trust was entered, Mr. Boyd no longer owned the Tamarack Property—Mr. Boyd had already conveyed the property to the Grove Trust. Therefore, the Doner Trust's judgment lien did not attach to the Tamarack Property.

Even though Mr. Boyd transferred the Tamarack Property before the Doner Trust obtained its judgment lien, the Doner Trust asserts various reasons why it believes its judgment lien has attached to the Tamarack Property anyway. None are correct.

---

[53] ORS 95.070 (repealed 1985).

[54] Or. Laws 1985 c. 664 (ORS 95.200 – ORS 95.310). Effective January 1, 2024, Oregon revised its statutes to adopt the Uniform Voidable Transactions Act. Or. Laws 1985 c. 83 (ORS 95.200 – ORS 95.310).

[55] ORS 95.270.

[56] ORS 95.070 (repealed 1985)

[57] ORS 95.260(1)(a).

[58] ORS 18.150(2).

**A. Filing of the Lis Pendens Did Not Give the Doner Trust an Interest in the Tamarack Property.**

The Doner Trust asserts that because it filed a complaint to set aside Mr. Boyd's transfer of the Tamarack Property to the Grove Trust, and recorded a *lis pendens* on August 23, 2022, identifying the Tamarack Property as the property affected, it obtained a lien interest or other property rights in the Tamarack Property. This assertion raises two issues: (1) was the *lis pendens* properly filed under Oregon law, or was it an ineffective slander of title, and (2) if the *lis pendens* was properly filed, exactly what interest, if any, did it give the plaintiffs in the Tamarack Property?

The first issue is an open question of Oregon law: although lower courts in Oregon have provided guidance relevant to whether plaintiffs in a fraudulent transfer case may file a *lis pendens*, the Oregon Supreme Court has not yet ruled on the issue. As a general matter, to have a valid *lis pendens*, the Oregon Court of Appeals has held that "the subject of the suit must be an actual interest in real property, not merely a speculative future one."[59] In *Doughty*, the Oregon Court of Appeals applied this rule and held that a creditor had no right to file a *lis pendens* when it had asserted its claim with the Construction Contractor's Board for money damages on which it might eventually prevail and that might eventually become a lien on real property, but where the creditor had no claim to an interest in the real property itself.[60]

This court has found only one decision from the Oregon Court of Appeals specifically addressing whether a plaintiff may file a *lis pendens* for a fraudulent transfer claim.[61] However, the facts in that case arose when the UFCA was in effect, and Oregon law specified that fraudulent transfers were void, not voidable. In *Pedro*, the Oregon Court of Appeals was careful to point that fact out in its opinion, specifically stating that "*former* ORS 95.070 provided that

---

[59] *Doughty v. Birkholtz*, 156 Or. App. 89, 95, 964 P.2d 1108, 1111 (1998); *Vukanovich v. Kine*, 251 Or. App. 807, 815, 285 P.3d 733, 738 (2012).
[60] *Id.*, 156 Or. App. at 95-96, 964 P.2d at 1111-12. This case arose in the context of a fraudulent transfer action, and the Oregon Court of Appeals also held that that the creditor could pursue its fraudulent transfer claim against a transferee of the property.
[61] *Pedro v. Kipp*, 85 Or. App. 44, 735 P.2d 651 (1987).

any conveyance of an estate in land made with the intent to hinder, delay or default creditors is void as to the person hindered, delayed or defrauded."[62] The Court of Appeals did not, and did not need to, opine on what the result would be if the UFTA applied, and whether a *lis pendens* could be filed if the transfer of property was merely voidable.[63] As a result, *Pedro* is inapplicable here.

There is one interlocutory trial court decision from the Multnomah County Circuit Court holding that a plaintiff could file a *lis pendens* if it was asserting a fraudulent transfer claim in the state circuit court, even before judgment was entered.[64] In reaching that decision, the Multnomah County Circuit Court relied on another opinion from the Oregon Court of Appeals, *Indian Ridge*, which held that a plaintiff could file a *lis pendens* when its writ of review proceeding "involved" an interest in the real property, reading the term "involved" broadly.[65]

This court does not find the Multnomah County Circuit Court's reasoning or reliance on *Indian Ridge* to be persuasive. In *Hotchalk*, the Multnomah County Circuit Court did not acknowledge or address the rule in *Doughty* that a speculative future interest is an insufficient basis for a plaintiff to file a *lis pendens*. Similarly, *Indian Ridge*, unlike *Doughty*, did not address whether a plaintiff could file a *lis pendens* in the context of a case involving allegedly fraudulent transfers. Instead, the plaintiff in *Indian Ridge* opposed an application to partition neighboring property and filed a *lis pendens* because he was concerned that the partition would affect the easements he held on that property.[66] The plaintiff had an actual interest—an easement—on the property to be partitioned,[67] and if the property were partitioned it would adversely affect plaintiff's easement, so it was not a stretch for the Oregon Court of Appeals to conclude that the partition proceeding "involved" plaintiff's interest in the real property. *Indian*

---

[62] *Id.*, 85 Or. App. at 48, 735 P.2d at 653.
[63] *Id.*
[64] *Hotchalk, Inc. v. Lutheran Church-Missouri Synod*, 2022 Ore. Cir. LEXIS 6117, *4 (Jan. 25, 2022).
[65] *Indian Ridge I, LLC v. Lenahan*, 314 Or. App. 715, 722-23, 497 P.3d 806, 810-11 (2021).
[66] *Indian Ridge*, 314 Or. App at 717, 497 P.3d at 808.
[67] *Id.*

*Ridge* was about whether the nature of plaintiff's claim to property was sufficient to file a *lis pendens*, and not whether that claim was actually in existence or just a speculative future interest.

The Doner Trust relies upon two cases involving plaintiffs who filed *lis pendens* after they filed lawsuits for specific performance of their contracts to purchase real property.[68] These cases did not discuss the *Doughty* rule at all and are not applicable here. In those cases, the claimants asserted contract rights to the specific property identified in the *lis pendens*.[69] In this case, the Doner Trust does not have any contract rights specific to the Tamarack Property.

Based on the requirement in *Doughty,* that a plaintiff must have an actual and not merely speculative interest in the real property to file a *lis pendens*, this court concludes that the Doner Trust's *lis pendens* is not valid under Oregon law. Here, the Doner Trust had no actual interest in the Tamarack Property, and would not, unless and until the transfer was avoided, the title to the Tamarack Property was returned to Mr. Boyd's name, and the judgment lien attached—events that never occurred. No court has yet determined that Mr. Boyd's transfer of the Tamarack Property to the Grove Trust was a fraudulent transfer.[70] When the Doner Trust filed the *lis pendens*, it was speculative whether those events would ever occur. Similarly, when Mr. Boyd filed his bankruptcy, at most the Doner Trust had a speculative future interest in the Tamarack Property, not an actual present interest. This was not enough for plaintiffs to file a valid *lis pendens*.

However, it does not really make any difference to the outcome of this case how the first issue is decided, because, on the second issue, even if the *lis pendens* was valid, the *lis pendens* did not give the Doner Trust a property right or a lien right in the Tamarack Property. The Oregon Supreme Court has specifically addressed the legal effect of a *lis pendens* and held that it

---

[68] ECF No. 33, p. 7, *citing Soliz v. Jimenez*, 222 Or. App. 251, 193 P.3d 34, 40 (2008) and *In re Springer Constr. LLC*, No. 22-31974-DWH7, 2023 WL 4714888, at *7 (Bankr. D. Or. July 24, 2023).

[69] *Id.*

[70] Although Ms. Amborn, as bankruptcy trustee, has brought fraudulent transfer counterclaims against Mr. Boyd and the Grove Trust in adversary proceeding case no. 23-6049, she has proposed to settle those claims.

provides a plaintiff a priority interest, but only to the extent the plaintiff prevails in its action.[71] "The effect of notice [of *lis pendens*] is to give the party filing the civil action priority over the lien of a subsequent judgment against the defendant. The lien of a subsequently recorded judgment is extinguished to the extent of the interest awarded to the party filing the civil action."[72] In other words, the *lis pendens* only affects title if the plaintiff wins its lawsuit. The Oregon Court of Appeals has also made this clear, holding "[t]hus, a plaintiff's recording of a notice of *lis pendens* has a concrete effect when statutory requirements are met *and the plaintiff ultimately prevails in litigation* regarding his or her claim to real property: it gives the plaintiff's interest in the property priority over subsequently asserted interests."[73] There is no doubt that the Oregon Court of Appeals concluded that a *lis pendens* had effect only if plaintiff prevails on its claims. The Oregon Court of Appeals further stated in *Vukanovich* that "[i]n other words, by properly recording a notice of *lis pendens*, a plaintiff who claims an interest in real property can ensure that his or her interest in that property will not be disturbed by certain other, subsequently recorded (or never recorded) claims to the same property, so long as the plaintiff ultimately prevails in the litigation."[74] Even the Multnomah County Circuit Court has held that a *lis pendens* is not, itself, a property interest.[75]

In this case, the plaintiffs have not prevailed, and cannot prevail, on their fraudulent transfer claims. At the time Mr. Boyd filed bankruptcy, the Doner Trust's claim to avoid Mr. Boyd's transfer as fraudulent was still pending. Once the bankruptcy was filed, the trustee

---

[71] *Hoyt v. Am. Traders, Inc.*, 301 Or. 599, 605, 725 P.2d 336, 340 (1986). The court does not find cases interpreting the effect of a *lis pendens* from other states to be useful in determining the effect of a *lis pendens* under Oregon law.

[72] *Id.* (emphasis added); *see also Pedro*, 85 Or. App. at 47, 735 P.2d at 652 ("The function of *lis pendens* is to give constructive notice to one dealing with real property that is the subject of pending litigation that he does so subject to the outcome of that litigation.").

[73] *Vukanovich*, 251 Or. App. at 813, 285 P.3d at 737 (emphasis added).

[74] *Id.*

[75] *Hotchalk*, 2022 Ore. Cir. LEXIS 6117, *5. ("A *lis pendens* is not a property interest itself, it is simply constructive notice to the world that there is litigation related to the underlying property so that future buyers can take that into account when deciding whether or not to purchase the property.")

assumed the exclusive right to pursue fraudulent transfer claims.[76] Because the plaintiffs had not already won and now cannot win their fraudulent transfer claims, their *lis pendens* does not have any effect on title to the Tamarack Property.

**B. The Correction Deed Had No Effect on Title to the Tamarack Property.**

To the extent that the Doner Trust relies on the Correction Deed to show that Mr. Boyd had an interest in the Tamarack Property, this reliance is misplaced. In the Bargain and Sale Deed recorded on April 11, 2022, Mr. Boyd conveyed his entire interest in the Tamarack Property to the Grove Trust. When the Correction Deed was later recorded on September 9, 2022, Mr. Boyd had no interest in the property to convey. A grantor cannot unilaterally use a correction deed to alter or revoke property interests that the grantor previously conveyed.[77] Instead, the Correction Deed is simply a "wild deed"—a deed executed by a grantor that does not own property.[78] The Correction Deed was legally ineffective and did not convey any interest in the Tamarack Property to anyone.[79] Thus, the Doner Trust's judgment did not attach to the Tamarack Property after the Correction Deed was recorded.

It is worth noting that Oregon has a statute regarding re-recording of corrected instruments. It provides that "[a]n instrument that has been previously recorded may be rerecorded to make corrections in the original instrument."[80] There is no evidence that the Correction Deed was a re-recording of any prior instrument. Thus, this statute is inapplicable.

---

[76] *See* Section I *supra*.
[77] *Hilterbrand v. Carter*, 175 Or. App. 335, 340-42, 27 P.3d 1086, 1089-90 (2001).
[78] *Wild Deed*, BLACK'S LAW DICTIONARY (12th ed. 2024).
[79] Even if the Correction Deed were effective, at most it would have transferred ownership of the Tamarack Property to The Keith Y. Boyd Living Trust, and not to Mr. Boyd personally. There is no evidence whether this trust was a revocable or irrevocable trust, so the court cannot conclude that the Doner Trust could have obtained a judgment lien against any interest of The Keith Y. Boyd Living Trust in the Tamarack Property.
[80] ORS 205.244(1).

### C. The Doner Trust's Judgment Lien Did Not Attach to any Equitable Interest of Mr. Boyd in the Tamarack Property

The Doner Trust asserts that its lien attached to Mr. Boyd's equitable interest in the Tamarack Property. This assertion raises two issues: (1) does a judgment lien attach to a judgment debtor's equitable interest in real property under Oregon law, and (2) did Mr. Boyd have an equitable interest in the Tamarack Property?

ORS 18.150 states that a judgment lien attaches to "all real property of the judgment debtor," but does not state that it attaches to equitable interests as well as legal title.[81] The statute is silent as to whether a judgment lien attaches to equitable interests. Thus, the court must interpret this statute. Under Oregon law, the first step in interpreting a statute is to look at text and context, which then must be given primary weight in the analysis.[82] Context includes not only the statutory framework, but also pre-existing common law.[83] The court may not insert language that has been omitted.[84]

Here, pre-existing common law provides useful context for interpreting ORS 18.150. Historically, the Oregon Supreme Court held that a judgment lien does not extend to an equitable interest and that a judgment lien does not attach to property after it is fraudulently conveyed.[85] The United States District Court for the District of Oregon applied the *Ingles* rule, holding that a judgment lien does not extend to property previously conveyed by the debtor.[86] If the Oregon Legislature had intended to change that rule when it adopted ORS 18.150, it presumably would have said so explicitly. It did not.

---

[81] This is unlike some other states, such as California, where state law specifically states that a judgment lien attaches to equitable interests. *See, e.g.,* Cal. Code Civ. Pro. § 697.340(a). Given the statutory differences, this court does not find cases interpreting the scope of judgment liens on equitable interests from other states to be useful in determining the scope of a judgment lien under Oregon law.

[82] *State v. Gaines*, 346 Or. 160, 171, 206 P.3d 1042, 1050 (2009).

[83] *Klamath Irrigation Dist v. United States*, 348 Or. 15, 23, 227 P.3d 1145, 1150 (2010).

[84] ORS 174.010.

[85] *See generally Smith v. Ingles*, 2 Or. 43 (1862).

[86] *In re Estes & Carter*, 3 F. 134 (D. Or. 1880), *aff'd* 5 F. 60 (C.C.D. Or. 1880).

Furthermore, under long-standing Oregon law, a judgment creditor cannot execute on a judgment creditor's equitable interest in real property before first establishing in a separate lawsuit that a debtor has an equitable interest in the property. As the Oregon Supreme Court has explained:

> In the interest of the debtor, and to afford purchasers of real property at an enforced sale thereof an equal opportunity with the judgment creditor, the rule adverted to has been adopted, requiring the latter first to establish the fact in a court of equity, in a suit instituted for that purpose, that the debtor's equitable estate in real property is subject to the payment of his demand, before such interest can be divested by a sale thereof upon execution. So long, therefore, as any substantial thing remains to be done by the debtor before his equitable estate in real property ripens into the legal title, such interest cannot be reached under an execution issued on a judgment in a law action, but to subject such estate to the payment of the creditor's demand, resort must be had to a court of equity to establish the right.[87]

This rule applied in Oregon even in the context of a fraudulent conveyance.[88]

The purpose of a judgment lien is to allow a creditor to execute on the property subject to the lien to collect its judgment. It would make no sense for the Oregon legislature to provide for a judgment creditor to have a lien on a judgment debtor's mere equitable interest in real property (not yet established in any other court) if the judgment creditor legally could not execute on that lien. To the extent a statute is ambiguous, the court should not choose an interpretation that would be absurd.[89] Therefore, this court concludes that ORS 18.150 does not provide for attachment of a judgment lien on a judgment debtor's equitable interest in real property before such equitable interest has otherwise been established by a court.[90]

Because no court had established that Mr. Boyd held an equitable interest in the Tamarack Property before the Doner Trust obtained its judgment lien, the Doner Trust did not obtain a judgment lien on the Tamarack Property when its judgment was entered.

---

[87] *Holmes v. Wolfard*, 47 Or. 93, 101, 81 P. 819, 822 (1905). This may explain why Oregon law later required that an equitable interest in property can only be sold on execution if an order or judgment specifically authorizes such sale. ORS 18.989 (Or. Laws 2005 ch. 542, § 52).

[88] *In re Estes & Carter*, 5 F. 60, 62 (C.C.D. Or. 1880)

[89] *Kupillas v. Sage & Soc. LLC*, 337 Or. App. 67, 77, ___ P.3d ___ (2024).

[90] This court need not, and does not, opine on whether a judgment lien could attach an equitable interest of a judgment debtor that had previously been recognized in court.

The Doner Trust has asked this court to determine in this proceeding that Mr. Boyd has an equitable interest in the Tamarack Property. It asserts that Mr. Boyd's equitable interest is evidenced by the facts that Mr. Boyd continued to live at the Tamarack Property, Mr. Boyd recorded the Correction Deed, Mr. Boyd claimed half-ownership in the Tamarack Property and a homestead exemption in his bankruptcy schedules, and Mr. Boyd and Mr. Grove both declared in declarations that they considered that they each owned fifty percent of the Tamarack Property at all times.[91]

This court cannot conclude on these facts on summary judgment, taking all inferences in favor of the non-moving party, that Mr. Boyd has an enforceable equitable interest in the Tamarack Property under Oregon law. The mere fact that Mr. Boyd lives at the Tamarack Property does not establish that he has an equitable ownership interest in the property. Many people live in property they do not own—residency does not signify ownership, but only occupancy. For the reasons set forth in Section B above, the Correction Deed has no legal effect. And the fact that Mr. Boyd and Mr. Grove have claimed various interests in the Tamarack Property at various times is not particularly meaningful. Under the limited facts proven on this record, it would be entirely possible to conclude that title to the Tamarack Property was a matter of convenience between Mr. Boyd and Mr. Grove—it was in Mr. Boyd's name when it was necessary to obtain credit to purchase the property, but in Mr. Grove or the Grove Trust's name when creditors were pursuing Mr. Boyd—and not an actual reflection of whether Mr. Boyd or Mr. Grove, or either of their trusts, owned the Tamarack Property.[92]

---

[91] ECF No. 21, Supporting Brief, p. 19; ECF No. 22, Exh. 11, pp. 3-4, Exh. 12, pp. 2-3.

[92] The Doner Trust also asserts that Mr. Boyd fraudulently transferred the Tamarack Property to the Grove Trust with actual intent to hinder, delay, or defraud his creditors. For the reasons set forth in Section I above, the Doner Trust cannot assert a fraudulent transfer claim, and the court is not deciding that issue in this case. But, if it were factually true that Mr. Boyd transferred the Tamarack Property with actual intent to hinder, delay, or defraud his creditors, Mr. Boyd could not himself successfully assert an equitable interest in the Tamarack Property. Under Oregon law, the court will not in equity provide a remedy to someone who acts with unclean hands in the same transaction. *N. Pac. Lumber Co. v. Oliver*, 286 Or. 639, 648-54, 596 P.2d 931, 937-940 (1979).

**Conclusion**

For the reasons set forth above, the Doner Trust cannot pursue fraudulent transfer claims arising from Mr. Boyd's transfer of the Tamarack Property to the Grove Trust. The Doner Trust's judgment lien has never attached to the Tamarack Property, and the *lis pendens* did not give the Doner Trust a security interest in the Tamarack Property. Therefore, the court will grant summary judgment to defendants on plaintiff's fraudulent conveyance and declaratory judgment claims. The court will grant declaratory judgment to Ms. Amborn, as bankruptcy trustee, that she has the sole right to pursue the fraudulent transfer claims, and the plaintiffs have no interest in the Tamarack Property.

Although Ms. Amborn, as bankruptcy trustee, is the prevailing party, the court will deny her request for attorney fees and costs, because she has not identified any factual or legal basis on which the court could make such an award.

Counsel for Ms. Amborn, as bankruptcy trustee, should submit an appropriate form of judgment in accordance with LBR 9021-1.

# # #